URBAN v. DOOLAN.

1. VENDOR AND PURCHASER—RESCISSION—FRAUD—TERMITES — EVIDENCE—OPINIONS.

In suit by purchasers of a farm to rescind land contract because of alleged misrepresentations as to condition of the buildings and because vendors knew of damage and existence of termites but fraudulently concealed the facts from plaintiffs, record held, without evidence that defendants made any material representations with reference to the property that were not true but that such statements as were made were mere expressions of opinion.

2. PLEADING—RESCISSION—AMENDMENT—FRAUD—MUTUAL MISTAKE —REPUGNANCY—DISCRETION OF COURT.

In suit to rescind land contract for purchase of farm on which buildings which had been erected by father of nonresident defendants were greatly damaged by termites, denial of leave to amend, at conclusion of plaintiffs' testimony, bill of complaint alleging fraud upon part of defendants, to base ground for relief upon alleged mutual mistake held, correct because of inconsistency and repugnancy of amendment; and not an abuse of discretion, there being nothing in the record to substantiate the claim or to indicate a mutual mistake between parties to the contract.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted October 7, 1937. (Docket No. 70, Calendar No. 39,694.) Decided December 14, 1937.

Bill by Rose Urban and Peter Urban against Ellen A. Doolan and others to have a contract for the sale of land declared void. Bill dismissed. Plaintiffs appeal. Affirmed.

*Lewis R. Williams (James T. Sloan,* of counsel), for plaintiffs.

*Edward E. Harwood (Raymond H. Dresser,* of counsel), for defendants.

CHANDLER, J.   On April 2, 1936, plaintiffs entered into a contract to purchase of defendants a certain farm of 80 acres situated in St. Joseph county, Michigan, for the agreed price of $3,500, $1,000 of which was paid at the time of the execution of the contract. None of the defendants lived on the farm nor had any of them occupied it for many years with the exception of the defendant Ellen A. Doolan, who lived in Kalamazoo, and who occasionally stayed there over week-ends.   The house on the premises was built very shortly after the year 1863 by the father of the defendants.

Before the purchase of the property, the plaintiff, Rose Urban, made three visits to the farm in company with a Mr. McDonald, a real estate agent, and on each visit she went through the house and other buildings on the farm, and then and there discovered that some repairs were needed.

Plaintiffs took possession of the farm in the early part of May, 1936, and very soon thereafter discovered that the buildings were infested with termites which had caused damage to such an extent that a piano leg went through the floor and window shades fell from the casings, and upon inspection by a termite expert in June it was discovered that the joists, sills, studdings and other portions of the buildings were infested with these pests.   At the time of the trial in May, 1937, it was estimated that the cost of repairing the buildings would be $1,350 and that the cost of exterminating the termites after necessary repairs had been made would be $586.15.

On November 12, 1936, plaintiffs filed a bill in equity to have the contract rescinded, alleging that at the time of the sale defendants fraudulently represented that the buildings were in good condition, and further that at the time thereof defendants knew of the damage and existence of the termites but fraudulently concealed the facts from plaintiffs.

As to any fraudulent representations on the part of defendants, the evidence is far from convincing. The plaintiff, Rose Urban, speaking of statements made by the defendant Ellen A. Doolan at the time the negotiations for the sale were in progress, testified:

"*Q.* Did she at that time say anything concerning the buildings on the premises?

"*A.* She told me the house was very good. Nice. A very good house. She said, the more I lived in there the more I would enjoy it.

"*Q.* Tell us as near as you can what she said about the house.

"*A.* Well she said it was a very nice house, and it was a comfortable house, and that she used to love to go down here and stay a while during the week-end, and she enjoyed staying there. I says, well it is a nice house. I says, I will like it very well otherwise I would not buy it.

"*Q.* What did she say, if anything, as to the condition of the house?

"*A.* Well that is all I understood, it was nice, is all."

Thus far it appears that anything this defendant had said concerning the buildings amounts to no more than sales talk. Upon further questioning by her counsel, plaintiff stated:

"*Q.* A while ago you said she said it was in good condition?

"*A.* Yes."

The foregoing comprises the only evidence produced in support of plaintiffs' allegations of fraudulent misrepresentation, a portion thereof being elicited in response to the leading and suggestive question of her counsel. However, the trial court in his opinion after quoting the foregoing questions and answers said: "It doesn't appear that she (witness) said a while ago that it was in good condition, and the question is leading and suggests the answer." From this statement and the findings of the court, it fairly appears that the trial court did not find that any representations were made by the defendants, or any of them, that the house "was in good condition," or that any material representations were made that were not true.

We, also, fail to find in the record any evidence that the defendants, or any of them, made any material representations with reference to the property in question that were not true.

At the conclusion of the plaintiffs' testimony counsel asked leave of the court to amend the bill of complaint by adding thereto the following paragraph:

"That the plaintiffs entered into the contract and agreement with the defendants believing and with the understanding that the house and barn on the premises were in good condition as appeared by ordinary examination and without being advised to the contrary and without knowledge or means of knowledge to the contrary, when as a matter of fact the house and barn on said premises at the time of entering into said contract said premises contained a house and barn that were infected with termites that had so damaged the premises and portions of said house and barn to such an extent and in such manner as hereinbefore in the bill of complaint of the plaintiffs set forth and particularly to the extent

that the sills, floors, walls, joists, studding, sheath-ing and woodwork were so damaged that the same was in immediate need of repair for safety and preservation of the premises and to the extent that the same would cost the sum of $1,173 therefor and the same were so infested with termites causing damage to said buildings that extermination of the termites was necessary which extermination would cost the sum of $538 and which if not made would result in further damage to said premises and all of which condition was unknown to the plaintiffs and if the same had been known would have resulted in the plaintiffs not entering into said contract and did result in the plaintiffs having a mistaken understand-ing as to the condition of said premises, and which condition, if not known or concealed by the defend-ants, resulted in a mistaken idea of the defendants as to the condition of said premises and a mutual mistake of the parties thereto, all to the damage of the plaintiffs in the sum of $1,711 and an amount almost equal to half of the purchase price of said premises and the half of the value thereof if such conditions had not existed and the plaintiffs ought to have relief in equity in regard thereto by rescis-sion of said contract and refund of the purchase payment or such other equitable relief as to the court may seem just because of substantial mistake and because the plaintiffs did not get that for which they had bargained, and the defendants did not sell to the plaintiffs that which the defendants presumed to be selling.''

At the time this motion was made there was noth-ing in the record to substantiate a claim or even to indicate that there was a mutual mistake between the parties to the contract.

The trial court denied leave to amend, holding that the original bill of complaint and the proposed amendment presented inconsistent theories. The court was correct in this conclusion. The proposed

amendment was not consistent with the original bill of complaint, and was in fact repugnant thereto. The original bill alleged as grounds for relief that the defendants had represented that the house on the premises was in good condition, well knowing at that time that said house was infested with termites and greatly damaged thereby, and that defendants did fraudulently conceal from plaintiffs said facts. It was not an abuse of discretion on the part of the trial court to deny plaintiff leave to amend. *Ogden* v. *Moore,* 95 Mich. 290; *Pluchak* v. *Crawford,* 137 Mich. 509; *Backus* v. *Kirsch,* 256 Mich. 368; *Konstantine* v. *City of Dearborn,* 280 Mich. 310.

The court, in his opinion filed at the conclusion of the hearing, said:

"The court must find that plaintiffs have absolutely failed to meet the burden of proof that there was fraud committed by the plaintiffs (defendants) on her."

We have examined the record with care and find no evidence of any misrepresentations of material facts. The most that can be said about the statements of Ellen A. Doolan, the only defendant with whom plaintiffs talked, is that they were mere expressions of opinions that the house was a "nice house," a "good house," and her testimony indicates to us that her opinion was an honest one.

To hold in this case that the evidence established a cause for equitable relief would place in jeopardy every contract where a party thereto had given expression to an opinion which later developments proved to be a poor one.

The decree dismissing plaintiffs' bill of complaint is affirmed, with costs to defendants.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Potter, JJ., concurred.